Shalom D. Stone
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, NJ 07932
(973) 400-4181
*Counsel for Plaintiffs*

Andrew J. Pincus *[Pro Hac Vice motion to be filed]*
Archis A. Parasharami *[Pro Hac Vice motion to be filed]*
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
*Counsel for Plaintiffs*

Alida Kass
NEW JERSEY CIVIL JUSTICE INSTITUTE
112 West State Street
Trenton, NJ  08608
(609) 392-6557
*Counsel for Plaintiff New Jersey Civil Justice Institute*

Steven P. Lehotsky *[Pro Hac Vice motion to be filed]*
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337
*Counsel for Plaintiff Chamber of Commerce
of the United States of America*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY CIVIL JUSTICE INSTITUTE and CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,<br><br>                    Plaintiffs,<br>       v.<br><br>GURBIR S. GREWAL,<br>in his official capacity as Attorney General of the State of New Jersey,<br><br>                    Defendant. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs New Jersey Civil Justice Institute ("NJCJI") and the Chamber of Commerce of the United States of America (the "Chamber") bring this action against Defendant Gurbir S. Grewal, in his official capacity as Attorney General of the State of New Jersey (the "Attorney General"), alleging as follows:

1. The street and post office addresses of the named parties to this case are:

<u>Plaintiffs</u>

New Jersey Civil Justice Institute
112 West State Street
Trenton, NJ 08608

Chamber of Commerce of the United States of America
1615 H Street, NW
Washington, DC 20062

<u>Defendant</u>

The Hon. Gurbir S. Grewal
Attorney General of the State of New Jersey
Office of the Attorney General
RJ Hughes Justice Complex
25 Market Street, Box 080
Trenton, NJ 08625-0080

## PRELIMINARY STATEMENT

2. Employers routinely enter into pre-dispute arbitration agreements with their employees so that both parties can make use of alternative dispute resolution procedures. As the Supreme Court of the United States observed nearly two decades ago, "there are real benefits to the enforcement of arbitration provisions. … Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122-23 (2001).

3. Arbitration ensures that the rights of individual employees under federal and state anti-discrimination laws remain protected. "The [Supreme] Court has been quite specific in holding that arbitration agreements can be enforced under the [Federal Arbitration Act] without contravening … policies … giving employees specific protection against discrimination[.]" *Id.*

4. Arbitration is simpler, cheaper, and faster than litigation in court. As a recent study released by the Chamber's Institute for Legal Reform found, arbitration cases in which the employee brought the claim and prevailed took, on average, 569 days to complete, while cases in court required an average of 665 days. Moreover, employees did better in arbitration than in court—in cases decided by an arbitrator or court (rather than settled), employees who filed claims won three times as often in arbitration—32% compared to 11%—and recovered an average award of $520,630 in arbitration compared to $269,885 in court. *See* NDP Analytics, *Fairer, Faster, Better: An Empirical Assessment of Employment Arbitration* 5-10 (May 2019), *available at* https://www.instituteforlegalreform.com/uploads/sites/1/Empirical-Assessment-Employment-Arbitration.pdf.

5. Arbitration also lowers the costs of dispute resolution, which creates savings that can benefit employees and consumers. But these benefits can be realized only when parties are free to enter into arbitration agreements *before* any disputes arise between them. Employers and employees should not be deprived of the ability to enter into an agreement to utilize arbitration, a valuable form of dispute resolution, before any disputes arise.

6. NJCJI and the Chamber file this action to enforce their rights and their members' rights under federal law, including the Federal Arbitration Act, 9 U.S.C. §§ 1-16, to enter into pre-dispute arbitration agreements with their employees.

7. Earlier this year, the New Jersey Legislature enacted a statute that (a) makes any provision in an employment agreement that "waives any substantive or procedural right" under the

state's Law Against Discrimination unenforceable and (b) provides that "[n]o right or remedy under" the Law Against Discrimination "or any other statute or case law" may be "prospectively waived." N.J.S.A. 10:5-12.7(a)-(b).  That statute was signed into law by the Governor on March 18, 2019, and took effect that same day.  2019 NJ Sess. Law Serv. Ch. 39 (West).

8. Because the Law Against Discrimination and other state employment statutes provide that individuals have a right to sue in court for violations of employment laws, the effect of Section 10:5-12.7 on employer-employee arbitration agreements—if it were enforceable—would be sweeping. The quintessential feature of an arbitration agreement is a mutual commitment by the employer and the employee to forgo litigation in court in favor of cheaper, more efficient, bilateral arbitration of any disputes.  Under Section 10:5-12.7, however, such agreements have been declared unenforceable as a matter of state law.

9. As explained in detail below, this complete ban on pre-dispute employment arbitration agreements violates the Federal Arbitration Act and is therefore preempted by federal law under the Supremacy Clause of the Constitution of the United States.  Accordingly, Plaintiffs respectfully request that the Court (1) grant a declaratory judgment that Section 10:5-12.7 is invalid as applied to pre-dispute arbitration agreements between employers and employees and (2) issue an order permanently enjoining the Attorney General from enforcing the statute with respect to arbitration agreements.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action under 28 U.S.C. § 1331, because Plaintiffs' claims arise under a federal statute—42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute . . . of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

11. As discussed below, Section 10:5-12.7, which the New Jersey Attorney General is charged with enforcing, violates the Federal Arbitration Act, and thereby deprives Plaintiffs and their members of enforceable rights secured by that federal law.

12. Venue lies in this judicial district under 28 U.S.C. § 1391(b)(1) because the only defendant resides in this district.

## PARTIES

13. Plaintiff New Jersey Civil Justice Institute ("NJCJI") is a nonprofit, nonpartisan group whose members include individuals, small businesses, business associations, and professional organizations that are dedicated to improving New Jersey's civil justice system. Its mission is to advocate for a civil justice system that treats all parties fairly and resolves disputes expeditiously and impartially. Its members include employers located in New Jersey that enter into arbitration agreements with their employees, including pre-dispute arbitration agreements entered into after March 18, 2019. The NJCJI routinely participates in litigation in federal and state courts on matters of federal arbitration law. In addition, many of the NJCJI's members are employers that are headquartered or located in New Jersey that enter into arbitration agreements with their employees. In bringing this lawsuit, the NJCJI seeks to vindicate the interests of these members and, more broadly, the interests of its broader membership and the entire business community in New Jersey that would be harmed if the state were permitted to bar pre-dispute employment arbitration agreements. The NJCJI seeks declaratory and injunctive relief; the individual members of the NJCJI are not indispensable to the proper resolution of the case.

14. Plaintiff the Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation, representing approximately 300,000 direct members and

indirectly representing an underlying membership of more than three million U.S. businesses and professional organizations of every size and in every economic sector and geographic region of the country.  The Chamber routinely advocates in federal and state courts on matters of federal arbitration law, including by the filing of lawsuits challenging anti-business regulatory actions that restrict businesses from entering into pre-dispute arbitration agreements.  Many of the Chamber's members are employers of all sizes—businesses and professional organizations—that are either headquartered or located in New Jersey, and that enter into arbitration agreements with their employees, including pre-dispute arbitration agreements entered into after March 18, 2019.  In bringing this lawsuit, the Chamber seeks to vindicate the interests of these members and, more broadly, the interests of its broader membership and the entire business community that would be harmed if New Jersey were permitted to bar pre-dispute employment arbitration agreements. The Chamber seeks declaratory and injunctive relief; the individual members of the Chamber are not indispensable to the proper resolution of the case.

15.     Defendant Gurbir S. Grewal is the Attorney General of the State of New Jersey. The Attorney General is sued in his official capacity only.

## BACKGROUND AND FACTUAL ALLEGATIONS

### The Federal Arbitration Act and Its Preemption of State Laws Prohibiting or Disfavoring Arbitration Agreements

16.     As the Supreme Court of the United States has frequently held, the Federal Arbitration Act "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (per curiam) (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam)) (in turn quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

17.     Specifically, Section 2 of the Federal Arbitration Act states that a "written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a

controversy thereafter arising out of such contract or transaction, * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

18. Section 2 allows for the invalidation of arbitration agreements that are the product of fraud or "unconscionability" or otherwise unenforceable as a matter of generally applicable contract law  (*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987)), so long as that state law does not interfere with the purposes and objectives of the Act.  But when an arbitration agreement does not run afoul of those constraints, Section 2 directs that "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), and *Volt Information Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

19. Time and time again, the Supreme Court has explained that the Federal Arbitration Act "foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements," by preempting state laws that frustrate the Act's purpose. *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).  This rule of preemption is now "well-established" (*Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 272 (1995)), and the Supreme Court has held numerous times that state laws that interfered with the enforceability of arbitration agreements are preempted.

   a. In *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984), the Court held that the California Franchise Investment Law was preempted by the Federal Arbitration Act to the extent it required that claims under the statute be decided in court.

    b. In *Perry v. Thomas*, 482 U.S. 483, 491 (1987), the Court held that the Act preempted a provision of the California Labor Law requiring a judicial forum for wage collection actions.

    c. In *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995), the Court held that the Act preempted a New York state law prohibition on arbitration of claims involving punitive damages.

    d. In *Preston v. Ferrer,* 552 U.S. 346, 356 (2008), the Court held that the Act preempted a California law granting the state labor commissioner, rather than an arbitrator, exclusive jurisdiction to decide an issue that the parties had agreed to arbitrate.

    e. In *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530 (2012) (per curiam), the Court held that the Act preempted a West Virginia law prohibiting arbitration of personal injury or wrongful death claims against nursing homes, explaining that "a categorical rule prohibiting arbitration of a particular type of claim . . . is contrary to the terms and coverage of the [Act]."

    f. In *Kindred Nursing Centers Limited Partnership v. Clark*, 137 S. Ct. 1421, 1426 (2017), the Court held that the Act preempted a state-law rule requiring express authorization in a power-of-attorney before an attorney-in-fact could agree to arbitration on behalf of her principal.

**Section 10:5-12.7 Makes Pre-dispute Arbitration Agreements Between Employers and Employees Unenforceable as a Matter of State Law**

20. Section 10:5-12.7 was enacted by the New Jersey Legislature in March 2019 as part of an amendment to the New Jersey "Law Against Discrimination," N.J.S.A. 10:5-1 *et seq.* ("NJLAD").

21. As relevant here, Section 10:5-12.7 provides that "[a] provision in any employment contract that waives any substantive or procedural right or remedy relating to a claim of discrimination, retaliation, or harassment shall be deemed against public policy and unenforceable." N.J.S.A. 10:5-12.7(a).

22. Section 10:5-12.7 further provides that "[n]o right or remedy under the 'Law Against Discrimination[]' or any other statute or case law shall be prospectively waived." N.J.S.A. 10:5-12.7(b).

23. Section 10:5-12.7, like the rest of the NJLAD, is enforced by the Attorney General, who has statutory authority to "proceed against any person in a summary manner in the Superior Court of New Jersey to compel compliance" with the NJLAD. N.J.S.A. 10:5-14.1.

24. The legislation enacting Section 10:5-12.7 also authorizes any private person "aggrieved by a violation" of the statute to sue the alleged violator in Superior Court, where "[a]ll remedies available in common law tort actions shall be available." N.J.S.A. 10:5-12.11. Plaintiffs in such actions are also entitled to attorneys' fees and costs if they prevail. *Id.*

25. The legislation enacting Section 10:5-12.7 specified that its provisions apply to "all contracts and agreements entered into, renewed, modified, or amended on or after the effective date" of March 18, 2019. 2019 NJ Sess. Law Serv. Ch. 39 (West).

26. The practical effect of Section 10:5-12.7 is to prohibit all pre-dispute arbitration agreements in new or revised contracts of employment.

27. The NJLAD gives an employee "claiming to be aggrieved by an unlawful employment practice" the right to "initiate suit in Superior Court" and to a jury trial. N.J.S.A. 10:5-13. Many other provisions of New Jersey employment law similarly give employees the right to sue in court. *See, e.g.*, N.J.S.A. 34:11-56a25 (right to sue in court for unpaid minimum wage); N.J.S.A. 34:6b-3 (right to sue in court for employment discrimination related to individual's use of tobacco

products); N.J.S.A. 34:11b-11 (right to sue in court for violation of Family Leave Act); N.J.S.A. 34:11d-5 (right to sue in court based on employer's failure to permit or pay earned sick leave).

28. Section 10:5-12.7 purports to make *all* of these rights to file suit in court unwaivable. N.J.S.A. 10:5-12.7(b) ("No right or remedy under the 'Law Against Discrimination'[] or any other statute or case law shall be prospectively waived."). But as the Supreme Court has noted, "the primary characteristic of an arbitration agreement" is "a waiver of the right to go to court and receive a jury trial." *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1427 (2017). Thus, under Section 10:5-12.7, employers in New Jersey are effectively barred by state law from entering into pre-dispute arbitration agreements with their employees, and any such agreement made after March 18, 2019 is rendered unenforceable and invalid under state law.

29. By its terms, Section 10:5-12.7 is not limited to the arbitration context. Plaintiffs do not challenge the enforceability of Section 10:5-12.7 with respect to contracts that are not arbitration agreements covered by the Federal Arbitration Act. But the fact that Section 10:5-12.7 sweeps more broadly than arbitration agreements alone does not immunize it from preemption with respect to arbitration agreements covered by the Act.

**The Attorney General Will Actively Enforce Section 10:5-12.7 Against New Jersey Employers**

30. Under Section 10:5-12.7, employers who seek to enter into pre-dispute arbitration agreements with employees are exposed to enforcement actions by the Attorney General.

31. The Attorney General is the New Jersey official charged with enforcing Section 10:5-12.7. Persons who allege a violation of the statute are permitted under the law to file a verified complaint with the Division on Civil Rights in the Attorney General's office. N.J.S.A. 10:5-13. Upon receipt of such a complaint, the Attorney General must "cause prompt investigation to be made in connection therewith." N.J.S.A. 10:5-14. The Attorney General has express statutory authority to "engage in conciliation" with an employer to seek a settlement on the complainant's

behalf (*id.*), and to bring suit against the employer in Superior Court "to compel compliance with" the provisions of the law (N.J.S.A. 10:5-14.1).

32.     It is a virtual certainty that the Attorney General will use these enforcement powers against New Jersey employers that use pre-dispute arbitration agreements, including NJCJI and Chamber members.  The Attorney General has urged the Congress of the United States to pass a federal ban on certain pre-dispute arbitration agreements.  *See* Press Release, N.J. Office of the Attorney General, Attorney General Joins Multi-State Coalition Seeking End to Required Arbitration of Workplace Sexual Harassment Claims (Feb. 12, 2018), https://nj.gov/oag/news-releases18/pr20180212a.html.  And his office has made clear its intent to "step up its efforts" to enforce the NJLAD.  *See* N.J. Office of the Att'y Gen., *Year in Review 2018*, at 13 (2018).

33.     Indeed, the Division of Civil Rights regularly enforces the Law Against Discrimination generally and announces findings of probable cause and/or remedial action against employers.  *See, e.g.*, Press Release, N.J. Office of the Att'y Gen., AG Grewal, Division on Civil Rights Announce Finding of Probable Cause Against Fitness Center for Asking Candidate About Marital Status (June 27, 2019), https://www.nj.gov/oag/newsreleases19/pr20190627c.html; Press Release, N.J. Office of the Att'y Gen., AG Grewal, Division on Civil Rights Announce Settlements in Two Separate Cases of Alleged Sexual Harassment in Restaurants (June 13, 2019), https://www.nj.gov/oag/newsreleases19/pr20190613a.html.

**Section 10:5-12.7 Will Harm New Jersey Employers and Their Employees**

34.     NJCJI and Chamber members, other New Jersey businesses, and employees throughout the State will suffer harm if Section 10:5-12.7 is allowed to stand.

35.     Employers in this State face serious harms as a result of Section 10:5-12.7.  For example, employers that intentionally refuse to comply with Section 10:5-12.7 because they believe it to be invalid under federal law will subject themselves to potential enforcement actions by

the Attorney General (or private parties).  N.J.S.A. 10:5-12.11 (authorizing suit by private parties); N.J.S.A. 10:5-14.1 (enforcement by Attorney General).  In such actions, employers could be liable for damages and attorneys' fees.  N.J.S.A. 10:5-12.11.

36. Meanwhile, employers that choose to comply with Section 10:5-12.7 out of fear of lawsuits and enforcement actions will have to forgo their right under the Federal Arbitration Act to enter into arbitration agreements with new employees (or to revise their existing arbitration agreements with current employees).  This will harm employers and employees alike, because arbitration is a fair and more convenient and efficient mechanism for resolving disputes.

37. As discussed above, arbitrations generally proceed more quickly than litigation in court.

38. Arbitration is also procedurally simpler, which reduces the burden on both parties. Indeed, arbitration's simplified procedures often allow individuals to proceed without a lawyer. *See, e.g.*, Jason Scott Johnston & Todd Zywicki, *The Consumer Financial Protection Bureau's Arbitration Study: A Summary and Critique* 25-26, Mercatus Working Paper, Mercatus Center at George Mason University, Arlington, VA (Aug. 2015) ("hiring an attorney * * * is often unnecessary [in arbitration]"). This aspect of arbitration is particularly beneficial to employees with smaller claims, such as a dispute over a small amount of unpaid overtime. For these claims to proceed in court, it may not be cost-effective to pay a lawyer on an hourly or flat-fee basis. And lawyers would be unwilling—because of the small stakes—to take the case on a contingency-fee basis. Yet the complexities of judicial litigation make pursuit of these claims on a *pro se* basis impossible. Thus, without pre-dispute arbitration, employees with these claims will be priced out of the judicial system.

39. At the same time, NJCJI and Chamber members that are New Jersey businesses will also face increased legal costs.  Arbitration is a cheaper and more efficient means of resolving

disputes than litigation in court.  Thus, if businesses cannot use arbitration to resolve employee disputes, their legal costs will increase as those disputes are moved into the court system.

40. Finally, because the cost of administering and responding to employee disputes will increase, employers' ability to provide employees with higher wages and reduce costs to consumers will inevitably decrease. This predictable consequence has the potential to impose a financial burden on employees across New Jersey—the very people whom Section 10:5-12.7 purports to protect.

41. The burdens that Section 10:5-12.7 will impose are not necessary to protect employees from discrimination.  Arbitration has been repeatedly shown to be fair to both sides and preferable to court proceedings.  As noted above, a recent study demonstrated that in cases decided on the merits, employees recovered *more* on average in arbitration—and did so in less time—than in court litigation.  Other studies have shown similar results.  One empirical analysis showed that employees who arbitrate are more likely to win their disputes than those who litigate in federal court (46% in arbitration as compared to 34% in litigation), and their arbitrations were resolved 33% faster than in court.  Michael Delikat & Morris M. Kleiner, *An Empirical Study of Dispute Resolution Mechanisms: Where do Plaintiffs Better Vindicate Their Rights?*, 58 Disp. Resol. J. 56, 58 (Nov. 2003 - Jan. 2004).  Another examined American Arbitration Association awards and determined that, for higher-income employees' claims, there was no statistically significant difference in win rates or amounts between arbitration and litigation.  Theodore Eisenberg & Elizabeth Hill, *Arbitration and Litigation of Employment Claims: An Empirical Comparison*, 58 Disp. Resol. J. 44, 45-50 (Nov. 2003/Jan. 2004).

## CAUSES OF ACTION

### COUNT I:
### 42 U.S.C. § 1983

42. Plaintiffs repeat and reallege paragraphs 1-41 as if set forth fully herein.

43. Under the Supremacy Clause of the Constitution, the "laws of the United States . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, any state laws that "stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," as expressed in federal law, are preempted and invalid. *See, e.g.*, *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 31 (1996) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

44. As the Supreme Court's precedent makes clear, the Federal Arbitration Act preempts state laws that purport to render unenforceable those arbitration agreements that are within the Federal Arbitration Act's coverage, except to the extent that such laws fall within the Act's savings clause. The savings clause, contained in Section 2 of the Act, permits arbitration agreements to be invalidated only based upon generally applicable "grounds [that] exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In addition, state laws that interfere with a fundamental characteristic of arbitration, such as waiver of the right to trial by jury, conflict with the FAA and are therefore preempted. *Concepcion*, 563 U.S. at 341-44.

45. Numerous arbitration agreements are declared unenforceable by Section 10:5-12.7. That statute provides that any employment arbitration agreement that applies to claims under the Law Against Discrimination is unenforceable in its entirety. But under the Act, agreements to arbitrate state statutory claims are generally enforceable. Indeed, the New Jersey Supreme Court has specifically held that claims under the Law Against Discrimination are arbitrable under the Act. *See Martindale v. Sandvik, Inc.*, 800 A.2d 872, 882 (N.J. 2002). And the U.S. Supreme Court has held that employment claims are arbitrable notwithstanding any state law to the contrary. *See Perry v. Thomas*, 482 U.S. 483, 490-92 (1987); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121-24 (2001). Section 10:5-12.7 thus conflicts with, and stands as an obstacle to, Congress's

objectives in enacting the Act.  It is therefore preempted.

46. Under 42 U.S.C. § 1983, this Court has the power to enforce the rights of Plaintiffs and Plaintiffs' members under the Federal Arbitration Act and to enter an injunction precluding the Defendant from enforcing Section 10:5-12.7.

## COUNT II:
## Equitable Relief

47. Plaintiffs repeat and reallege paragraphs 1-46 as if set forth fully herein.

48. For the reasons discussed above, Section 10:5-12.7, which the New Jersey Attorney General is charged with enforcing, violates the Federal Arbitration Act, and thereby deprives Plaintiffs and their members of enforceable rights secured by that federal law.

49. Federal courts of equity have the power to enjoin unlawful actions by state officials. Such equitable relief has traditionally been available in the federal courts to enforce federal law.

50. This Court can and should exercise its equitable power to enter an injunction precluding the Defendant from enforcing Section 10:5-12.7.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Declare that Section 10:5-12.7 is preempted by the Federal Arbitration Act and is therefore invalid as applied to pre-dispute arbitration agreements between employers and employees that are covered by the Act;

B. Permanently enjoin the Attorney General from enforcing Section 10:5-12.7 as applied to pre-dispute arbitration agreements between employers and employees that are covered by the Act;

C. Enter judgment in favor of Plaintiffs;

D. Award Plaintiffs their costs and attorneys' fees incurred in bringing this action; and

E. Grant Plaintiffs such other relief as the Court deems just and proper.

Dated: August 30, 2019

Respectfully submitted,

By:   s/ *Shalom D. Stone*

Shalom D. Stone
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, NJ 07932
(973) 400-4181
(973) 498-0070 (fax)
sstone@stoneconroy.com
*Counsel for Plaintiffs*

Andrew J. Pincus[*]
Archis A. Parasharami[*]
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
(202) 263-3300 (fax)
apincus@mayerbrown.com
*Counsel for Plaintiffs*

Alida Kass
NEW JERSEY CIVIL JUSTICE INSTITUTE
112 West State Street
Trenton, NJ  08608
(609) 392-6557
akass@civiljusticenj.org
*Counsel for Plaintiff
New Jersey Civil Justice Institute*

Steven P. Lehotsky[*]
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337
(202) 463-5346 (fax)
slehotsky@uschamber.com
*Counsel for Plaintiff Chamber of Commerce of the United States of America*

[*] *Motion for Admission Pro Hac Vice To Be Filed*