NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY CIVIL JUSTICE INSTITUTE and CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, <br><br> Plaintiffs, <br><br> v. <br><br> GURBIR GREWAL, in his official capacity as Attorney General of the State of New Jersey, <br><br> Defendant. | Civ. No. 19-17518 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss filed by Defendant Gurbir Grewal in his official capacity as Attorney General of the State of New Jersey ("Defendant"). (ECF No. 12.) Plaintiffs New Jersey Civil Justice Institute and Chamber of Commerce of the United States of America (collectively, "Plaintiffs") oppose. (ECF No. 18.) The Court has decided this matter based upon the written submissions and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Motion to Dismiss is denied.

## BACKGROUND

Plaintiff New Jersey Civil Justice Institute ("NJCJI") is a nonprofit, nonpartisan group whose members include individuals, small businesses, business associations, and professional organizations that are dedicated to improving New Jersey's civil justice system. (Compl. ¶ 13, ECF No. 1.) NJCJI participates in litigation regarding federal arbitration law and asserts that

1

many of its members routinely enter into pre-dispute arbitration agreements with their employees. (*Id.*) Plaintiff Chamber of Commerce of the United States of America ("Chamber") is a business federation representing approximately 300,000 members. (*Id.* ¶ 14.) Chamber routinely advocates on matters of federal arbitration law and anti-business regulatory actions. (*Id.*) Chamber asserts that many of its members are located in New Jersey and also enter into pre-dispute arbitration agreements with their employees. (*Id.*)

On March 18, 2019, New Jersey enacted N.J. Stat. Ann. § 10:5-12.7 ("Section 12.7"), which provides in relevant part:

> a. A provision in any employment contract that waives any substantive or procedural right or remedy relating to a claim of discrimination, retaliation, or harassment shall be deemed against public policy and unenforceable.
> b. No right or remedy under the "Law Against Discrimination," P.L. 1945, c.169 (C.10:5-1 et seq.) or any other statute or case law shall be prospectively waived.

N.J. Stat. Ann § 10:5-12.7. Section 12.7 is an amendment to the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 *et seq*. ("NJLAD"), which gives "[a]ny person claiming to be aggrieved by an unlawful employment practice or an unlawful discrimination" the "right to file a complaint in the Superior Court to be heard before a jury." N.J. Stat. Ann. § 10:5-13(a)(1)–(2). Under the NJLAD, an aggrieved party may also file a complaint with the Attorney General, who "shall cause prompt investigation" of the claim and "engage in conciliation." N.J. Stat. Ann. § 10:5-14. The NJLAD also authorizes the Attorney General to initiate a suit in New Jersey Superior Court on its own accord. N.J. Stat. Ann. § 10:5-13(a)(2).

Plaintiffs argue that Section 12.7, read in conjunction with the other provisions of the NJLAD, prohibits pre-dispute arbitration agreements between employers and their employees. (Compl. ¶ 26.) For this reason, Plaintiffs assert that Section 12.7 is preempted by the Federal Arbitration Act ("FAA"). (*Id.* ¶¶ 42–46.) Section 2 of the FAA permits arbitration agreements to

be invalidated only based upon "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. On August 30, 2019, Plaintiffs filed the present suit seeking a declaration that Section 12.7 is preempted by the FAA and a permanent injunction precluding Defendant from enforcing Section 12.7. (Compl. ¶ 46.)

On January 7, 2020, Defendant filed the present Motion to Dismiss, arguing that Plaintiffs lack standing and that the case is not ripe for adjudication. (ECF No. 12.) On February 18, 2020, Plaintiffs filed an Opposition. (ECF No. 18.) On March 9, 2020, Defendant filed a Reply. (ECF No. 22.) The Motion to Dismiss is presently before the Court.[1]

## **LEGAL STANDARD**

### I.     **Motion to Dismiss**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a Defendant may move at any time to dismiss the Complaint for lack of subject-matter jurisdiction on either facial or factual grounds. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In analyzing a facial challenge, a court "must consider only the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *Mortensen*, 549 F.2d at 891). In considering a factual challenge, however, a court "may consider evidence outside of the pleadings." *Id.* (citing *Mortensen*, 549 F.2d at 891). Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, 2010 WL 3908567, at *2, (D.N.J. Sept. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

---

[1] On January 7, 2020, Plaintiffs also filed a Motion for Summary Judgment. (ECF No. 13.) The Court reserves ruling on that Motion until oral argument is held at a later date.

**DISCUSSION**

**I.     Standing**

To establish Article III standing for injunctive relief, a plaintiff must show (1) "that he is under threat of suffering 'injury in fact' that is concrete and particularized"; (2) "the threat must be actual and imminent, not conjectural or hypothetical"; (3) "it must be fairly traceable to the challenged action of the defendant"; and (4) "it must be likely that a favorable judicial decision will prevent or redress the injury." *Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 825 F.3d 149, 165 (3d Cir. 2016) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). To separate the standing inquiry from an assessment of the merits, the court must "assume for the purposes of [a] standing inquiry that a plaintiff has stated valid legal claims." *Cottrell v. Alcon Labs.*, 874 F.3d 154, 162 (3d Cir. 2017) (citation omitted). Because the standing elements are not mere pleading requirements but rather an indispensable part of a plaintiff's case, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Defendant challenges both the injury-in-fact and causation elements of Plaintiffs' standing. (Mot. to Dismiss at 6–10, ECF No. 12.)

      **A.**     *Injury-in-Fact*

To allege an injury-in-fact, Plaintiffs must show that they have suffered "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. at 560 (internal citations and quotation marks omitted). An injury is particularized when it "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted). A

concrete injury is one that "actually exist[s]" and is "real" rather than "abstract." *Id.* "The injury-in-fact requirement is 'very generous' to claimants, demanding only that the claimant 'allege[ ] some specific, identifiable trifle of injury.'" *Cottrell v. Alcon Labs*, 874 F.3d at 162 (quoting *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982)). Organizations or associations "are unable to establish standing solely on the basis of institutional interest in a legal issue." *Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 162 (3d Cir. 2007). Instead, an organization may assert standing (a) through direct injury to the organization or (b) as a representative of injured members of the organization. *See id.* at 163. Plaintiffs assert both forms of standing, and the Court will address each in turn.

1. Direct Organizational Standing

An entity has direct organizational standing when the organization itself suffers injuries as a result of the defendant's allegedly unlawful conduct. This may occur, for example, when an when an organization must divert its resources to counteract the allegedly unlawful conduct. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982) (finding an injury-in-fact where the organization alleged that the unlawful conduct "perceptibly impaired" its ability to provide counseling and referral services by requiring it to "devote significant resources to identify and counteract the defendant's [unlawful conduct]"); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 308 (3d Cir. 2014) (finding standing where the organization diverted its resources to remedy the alleged discrimination); *Fair Hous. Rights Ctr. in Se. Pa. v. Post Goldtex GP, LLC*, 823 F.3d 209, 214 n.5 (3d Cir. 2016) (finding standing where the organization alleged that its mission had been frustrated "because it has had to divert resources in order to investigate and prosecute the alleged discriminatory practices").

While the Complaint does not clearly allege direct standing, Plaintiffs assert that they have direct standing in their Opposition, and the Plaintiffs' Motion for Summary Judgment—filed on the same date as the present Motion to Dismiss—provides two declarations that set forth facts relevant to direct standing. (*See* Spencer Decl., ECF No. 13-3; Kass Decl., ECF No. 13-4.)[2] The declaration by Glenn Spencer, the Senior Vice President of the Employment Policy Division at Chamber, states that Section 12.7 "directly conflicts with the Chamber's mission to reduce the costs of litigation and promote alternative forms of dispute resolution." (Spencer Decl. ¶ 10.) Spencer further states that Chamber "has had to divert resources from other critical projects" in order to address the harms posed by Section 12.7 to its members, including by "conven[ing] discussions with members to explain the arbitration statute and to address its implications and ramifications for employers in New Jersey." (*Id.* ¶¶ 12–13.) Similarly, the declaration by Alida Kass, the President and Chief Counsel of NJCJI, states that Section 12.7 "impedes NJCJI's ability to carry out its mission to work toward a more efficient civil justice system," and has forced NJCJI to "divert[] resources from its other efforts to promote efficient dispute resolution in New Jersey." (Kass Decl. ¶¶ 7, 10.) Specifically, NJCJI has "incurred significant expense in holding meetings with members, producing educational materials, and hosting educational events for members of the business community in New Jersey to explain the arbitration statute." (*Id.* ¶ 10.) Ms. Kass asserts that these activities "have drained NJCJI's time and resources from other projects" (*Id.*)

---

[2] Plaintiffs request leave to amend the Complaint in order to incorporate the information from these declarations. (Pls.' Opp'n at 9–10, ECF No. 18.) However, because the Court is addressing a factual challenge to subject-matter jurisdiction, it may consider facts outside of the pleadings. *See Mortensen*, 549 F.2d at 891–92 ("[B]ecause a trial court's very power to hear a case is at issue in a factual 12(b)(1) motion, a court is free to weigh evidence beyond the plaintiff's allegations.").

Defendant disputes Plaintiffs' allegations and argues that, even if accepted as true, the allegations are insufficient because Plaintiffs have not specified "what resources have been diverted (*e.g.*, personnel, funding) or which, if any, of their programs have suffered as a result." (Def.'s Reply at 7, ECF No. 22.) Defendant relies on *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71 (3d Cir. 1998), in which the Third Circuit held that the organizational plaintiff lacked standing. In that case, although the plaintiff alleged that the defendant's discriminatory conduct forced it to divert organizational resources to an educational campaign, the plaintiff "was unable to say when such measures might be undertaken or when funds might actually be expended in support of this educational effort." *Id.* at 77. However, *Fair Housing Council* addressed standing at the summary judgment stage, whereas the present challenge comes before the Court at the motion-to-dismiss stage, in which there is a lower evidentiary threshold. *Id.* at 75–76 (finding that the plaintiff's allegations regarding standing "were sufficient to withstand a motion to dismiss," but "something more than these naked allegations was required at the summary judgment stage"); *see also Lujan v. Defs. of Wildlife*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim."). Accordingly, the Third Circuit's more stringent evidentiary requirement in *Fair Housing Council* is not applicable at this stage.

The Court finds that Plaintiffs have adequately demonstrated direct organizational standing to overcome the Motion to Dismiss. Plaintiffs' allegations that they have been forced to divert their resources toward addressing Section 12.7 through developing educational materials and organizing meetings and educational events are akin to the allegations that the Supreme

Court upheld at the motion-to-dismiss stage in *Havens*. The organizational plaintiff in *Havens* alleged that it "has had to devote significant resources to identify and counteract the defendant's [sic] racially discriminatory steering practice." 455 U.S. at 379 (alteration in original). The Supreme Court held that "[i]f, as broadly alleged, petitioners' steering practices have perceptibly impaired [the organization's] ability to provide counseling and referral services for low- and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact." *Id.* However, the Court noted that the organization "will have to demonstrate at trial that it has indeed suffered impairment . . . before it will be entitled to judicial relief." *Id.* at 379 n.21. Likewise, while Plaintiffs' allegations are sufficient at this stage, further specificity is required to prove direct standing at trial.

### 2. Associational Standing

The Supreme Court has established a three-prong test for representative, or associational, standing: the organization must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Defendant challenges the first prong, asserting that Plaintiffs' members do not have standing to sue in their own right because Defendant has not enforced Section 12.7 against them. (Mot. to Dismiss at 7–10.)

Defendant first argues that Plaintiffs cannot claim associational standing because they have failed to adequately identify their members. (Mot. to Dismiss at 7–8.) This District has held that an organization "need not reveal its membership list at the pleading stage in order to bring

8

suit on its members behalf." *Forum for Acad. & Instit. Rights, Inc. v. Rumsfeld*, 291 F. Supp. 2d 269, 286–87 (D.N.J. 2003). Instead, courts must consider "whether the factual allegations in a given context sufficiently demonstrate that an association indeed has members that have suffered an injury-in-fact." *Id.* (holding that organization was not required to disclose its members where it had alleged that its members maintain non-discrimination policies to which they could no longer adhere under the challenged law). The Complaint states that NJCJI's members include "employers that are headquartered or located in New Jersey that enter into arbitration agreements with their employees." (Compl. ¶ 13.) Chamber claims to have 300,000 members, many of whom "are employers of all sizes . . . that are either headquartered or located in New Jersey, and that enter into arbitration agreements with their employees." (*Id.* ¶ 14.) Both Plaintiffs allege that they have members who have continued to enter into pre-dispute arbitration agreements with employees after March 18, 2019. (*Id.* ¶¶ 13–14.) Therefore, even though Plaintiffs do not disclose the names of individual members, the allegation that their members continue to enter into pre-dispute arbitration agreements in violation of Section 12.7 is sufficient at this stage.

Next, Defendant asserts that Plaintiffs have failed to allege that any of their members have suffered an actual injury or are in imminent danger of an injury as a result of the enactment of Section 12.7. (Mot. to Dismiss at 8–9.) When assessing standing for a pre-enforcement action, the focus is "on the threat of future harm." *Free Speech Coal.*, 825 F.3d at 166. Where threatened action by the government is concerned, courts "do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 541 (3d Cir. 2017) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007)). Instead, the question is whether the plaintiff has alleged a "sufficiently imminent" injury. *Susan B. Anthony List v. Driehaus ("SBA List")*, 573 U.S. 149, 159 (2014).

An injury may be sufficiently imminent when, for example, a plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)); see also *Free Speech Coal.*, 825 F.3d at 166 (internal citations omitted) ("Sufficient injury exists to confer standing where the regulation is directed at [the plaintiffs] in particular; it requires them to make significant changes in their everyday business practices; [and] if they fail to observe the . . . rule they are quite clearly exposed to the imposition of strong sanctions, even where there is no pending prosecution.").

The allegations in the Complaint, construed in Plaintiffs' favor, adequately demonstrate a sufficiently imminent injury. First, Plaintiffs allege that some of their members have continued to enter into pre-dispute arbitration agreements after the enactment of Section 12.7. (Compl. ¶¶ 13–14.) Therefore, the Court finds that Plaintiffs have adequately demonstrated that some of their members "inten[d] to engage in a course of conduct" that is "arguably . . . proscribed by [the] statute." *SBA List*, 573 U.S. at 161–62. Plaintiffs also allege that their members who choose to comply with Section 12.7 are injured because they are forced to "forgo their right under the [FAA] to enter into arbitration agreements with new employees" and face increased legal costs. (Compl. ¶¶ 36–40.) The Court also finds this to be a plausible injury, since these members have been required to "make significant changes in their everyday business practices." *Free Speech Coal.*, 825 F.3d at 166.

Although not raised in its Motion to Dismiss, Defendant argues in its Reply that because "Section 12.7 of the [NJLAD] does not single out arbitration," it does not clearly proscribe pre-dispute arbitration agreements. (Def.'s Reply at 10–11.) However, the intended future conduct only needs to be "arguably . . . proscribed by [the] statute." *SBA List*, 573 U.S. at 162 (quoting

*Babbitt*, 442 U.S. at 298). Section 12.7 states that "[n]o right or remedy" under the NJLAD may be prospectively waived, N.J. Stat. Ann. § 10:5-12.7(b), and the NJLAD affords an aggrieved person "the right to file a complaint in the Superior Court to be heard before a jury," N.J. Stat. Ann. § 10:5-13(a)(1)–(2). Reading these statutory provisions together, the Court finds that for the purposes of assessing justiciability, Section 12.7 arguably proscribes pre-dispute arbitration agreements in the employment discrimination context. Furthermore, although courts have not yet ruled on the applicability of Section 12.7 to arbitration agreements, at least one court has noted that Section 12.7 "may restrict the use of arbitration provisions with respect to claims for discrimination." *Neith v. ESquared Hospitality LLC*, 2020 WL 278692, at *6 n.4 (D.N.J. Jan. 16, 2020) (withholding ruling on the scope of Section 12.7 because the arbitration agreement at issue was signed prior to the enactment of Section 12.7).[3]

Next, Defendant argues that Plaintiffs' members do not face a credible threat of prosecution because the NJLAD does not require enforcement by the Attorney General, but rather gives the Attorney General discretion to enforce the statute. (Mot. to Dismiss at 9.) Meanwhile, Plaintiffs argue that the statutory authorization of the Attorney General to enforce Section 12.7, as well as the fact that the Attorney General "regularly enforces the [NJLAD]," make future enforcement imminent. (Compl. ¶¶ 31–33.) For support, Plaintiffs refer to several press releases that demonstrate the Attorney General's past enforcement of other provisions of the NJLAD (*id.* ¶ 33), as well as public statements that indicate the Attorney General's "intent to

---

[3] Several suits have already challenged the enforcement of pre-arbitration agreements under Section 12.7. *See Guirguess v. Public Serv. Elec. & Gas Co.*, 2019 WL 6713411, at *3–4 (N.J. Sup. Ct. App. Div. Dec. 10, 2019); *Hannen v. Group One Auto., Inc.*, 2019 WL 7287119, at *2 n.3 (N.J. Sup. Ct. App. Div. Dec. 30, 2019). Although these suits were brought by employees, rather than the Attorney General, they are further evidence that Section 12.7 is construed as prohibiting pre-dispute arbitration agreements.

11

'step up its efforts' to enforce the NJLAD" and its position against pre-dispute arbitration agreements for workplace sexual harassment claims (*id.* ¶ 32). Furthermore, the NJLAD states that when an individual files a complaint with the Division of Civil Rights, "the Attorney General *shall* cause prompt investigation to be made in connection therewith." N.J. Stat. Ann. § 10:5-14 (emphasis added). The Attorney General, upon a complaint or on its own accord, may bring suit against the employer in the Superior Court of New Jersey "to obtain an injunction" or "to compel compliance with any of the provisions of the [NJLAD]." § 10:5-14.1.

Based on the language of the NJLAD and prior enforcement of the NJLAD by the Attorney General, the Court finds that there is a credible threat that the Attorney General will enforce Section 12.7 against those members who continue to enter into pre-dispute arbitration agreements with employees. This threat exists even if the Attorney General does not assert its intent to enforce Section 12.7. *See Free Speech Coal.*, 825 F.3d at 166 ("There is no dispute that Plaintiffs intend to continue to engage in conduct that subjects them to enforcement under the Statutes. And nothing prevents law enforcement from resuming inspections pursuant to [the Statute], even if we accept the Government's representation that it has no current plans to do so"). Additionally, the fact that aggrieved individuals can file a complaint with the Attorney General, prompting it to initiate an investigation, further supports Plaintiffs' argument. *See SBA List*, 573 U.S. at 164 (finding the likelihood of future enforcement bolstered by the fact that any person—not just a prosecutor or agency—could file a complaint against Plaintiffs with the Ohio Election Commission).[4] Accordingly, the Court finds that Plaintiffs' allegations are sufficient at

---

[4] Although the opinion in *SBA List* addressed a criminal statute, the Supreme Court said that it would "take the threatened Commission proceedings into account because administrative action, like arrest or prosecution, may give rise to harm sufficient to justify preenforcement review." 573 U.S. at 165. The Court did not decide if such a threat alone gives rise to an injury-in-fact, because the Commission proceedings at issue were "backed by the additional threat of criminal

the pleading stage to demonstrate that at least some of Plaintiffs' members have been or will be imminently harmed by Section 12.7. *See Chamber of Commerce of U.S. v. Becerra*, 2020 WL 605877, at *8–9 (E.D. Cal. Feb. 7, 2020) (finding standing based on nearly identical alleged injuries).[5]

The Court also finds that the second and third prongs of the associational standing test are satisfied. The interests that Plaintiffs seek to protect are "germane to the organization[s'] purpose." *See Hunt*, 432 U.S. at 343. Additionally, the claim asserted does not require the participation of individual members in the lawsuit. *Id.* (finding it proper for an organization to seek a "declaration, injunction, or some other form of prospective relief" on behalf of its members). Accordingly, Plaintiffs have adequately demonstrated an injury-in-fact under either direct or associational standing at the motion-to-dismiss stage.

B.   *Causation*

Defendant asserts that "even if Plaintiffs ha[ve] established an injury-in-fact, they have failed to establish that any such injury is fairly traceable to the conduct of the Attorney General." (Mot. to Dismiss at 10.) This argument is unpersuasive. The alleged harms derive from the future enforcement of Section 12.7. The Attorney General has been tasked with enforcing all provisions of the NJLAD, which includes Section 12.7. For these reasons, the Court finds that Plaintiffs' claims satisfy the causation requirement of standing.

---

prosecution." *Id.* By contrast, Section 12.7 does not provide for criminal sanctions; however, it does provide for civil enforcement actions, which the Court finds to be sufficient harm at this stage.

[5] The suit, also brought by Plaintiff Chamber, challenges a California law that allegedly prohibits California employers from entering into pre-dispute arbitration agreements. *Becerra*, 2020 WL 605877, at *1. Plaintiff Chamber and other organizations alleged that their members would be injured by either facing enforcement and sanctions under the law or by foregoing their right to arbitration under the FAA. *Id.* at *8.

Defendant does not contest the final standing requirement of redressability. The Court finds that this element is satisfied. Therefore, Plaintiffs' allegations regarding standing are sufficient to overcome the Motion to Dismiss.

## II.     Ripeness

Finally, Defendant argues that Plaintiffs' claims are not ripe. (Mot. to Dismiss. at 11–13). In *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), the Supreme Court laid out two principal considerations for determining ripeness: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Id.* at 149. The Third Circuit has noted that in the context of pre-enforcement challenges, the justiciability issue "can equally be described in terms of standing" as in terms of ripeness, since the key inquiry is the likelihood of future harm. *Plains*, 866 F.3d at 539 (citing *MedImmune,* 549 U.S. at 128 n.8).[6]

### A.     *Fitness of the Issues*

Defendant argues that the issues are not fit for adjudication because Plaintiffs' claims rest on "contingent future events that may or may not occur." (Mot. to Dismiss at 11–12 (citing *Texas v. United States*, 523 U.S. 296, 300–01 (1998).) Defendant's argument is essentially the same as its argument regarding standing: that Plaintiffs have failed to demonstrate that enforcement of Section 12.7 is sufficiently imminent. For the same reasons noted above, the Court finds that Plaintiffs have demonstrated a sufficiently imminent injury such that the claims are ripe for

---

[6] In a pre-enforcement challenge seeking declaratory relief, the Third Circuit applies the test from *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir. 1990), which looks to "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." *Plains*, 866 F.3d at 539–40 (quoting *Khodara Envtl., Inc. v. Blakely*, 376 F.3d 187, 196 (3d Cir. 2004)). The Third Circuit has noted that the *Step-Saver* test is "merely a different framework for conducting the same justiciability inquiry" as the test in *Abbott Laboratories*, and the "hardship" and "fitness" factors still guide the analysis. *Plains*, 866 F.3d at 540. The Court applies the *Abbott Laboratories* test here but notes that ripeness is also satisfied under the *Step-Saver* test.

14

judicial review. *See supra* Section I.A. Additionally, the question before the Court—whether Section 12.7 is preempted by the FAA—is purely legal, and thus further factual development is not required. *See Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) (citing *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983)) ("[The Supreme Court] has indicated that a factual record is not as important where the question presented is 'predominantly legal,' such as one of federal preemption."); *see also SBA List*, 573 U.S. at 167 (citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)) (finding the "fitness" standard satisfied because the "challenge to the Ohio false statement statute presents an issue that is 'purely legal and will not be clarified by further factual development'"). For these reasons, the Court finds that the issues are fit for judicial review.

B.    *Hardship to the Parties*

Plaintiffs assert that denying pre-enforcement review would impose a substantial hardship on Plaintiffs and their members because Section 12.7 forces businesses "to choose between refraining from a federally-protected activity and risking costly proceedings or prosecution." (Pls.' Opp'n at 20–21, ECF No. 18.) The Supreme Court has held that "a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately" is "ripe for review at once." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 891 (internal citations and quotation marks omitted). Similarly, in *SBA List*, the Court found that denial of judicial review would impose a substantial hardship on the plaintiffs because they would be forced "to choose between refraining from core political speech on the one hand, or engaging in that speech and risking costly Commission proceedings and criminal prosecution on the other." 573 U.S. at 167–68. Plaintiffs' members similarly must immediately adjust their conduct or face potential litigation. Accordingly, the Court finds that Plaintiffs have sufficiently

15

alleged hardship at the pleading stage. For these reasons, Plaintiffs' claims are ripe, and Defendant's Motion to Dismiss is denied.

## **CONCLUSION**

For the foregoing reasons, the Motion to Dismiss (ECF No. 12) is denied. An appropriate Order will follow.

Date: July 21, 2020                            */s/ Anne E. Thompson*
                                                             ANNE E. THOMPSON, U.S.D.J.