NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NEW JERSEY CIVIL JUSTICE INSTITUTE and CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, <br><br> Plaintiffs, <br><br> v. <br><br> GURBIR GREWAL, in his official capacity as Attorney General of the State of New Jersey, <br><br> Defendant. | Civ. No. 19-17518 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter comes before the Court upon the Motion for Summary Judgment filed by Plaintiffs New Jersey Civil Justice Institute and Chamber of Commerce of the United States of America (collectively, "Plaintiffs"). (ECF No. 13.) Defendant Gurbir Grewal in his official capacity as Attorney General of the State of New Jersey ("Defendant") opposes. (ECF No. 19.) Plaintiffs seek a declaration that N.J. Stat. Ann. § 10:5-12.7 ("Section 12.7") is preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1–16, and an injunction precluding Defendant from enforcing Section 12.7. (Compl. ¶¶ 46, 50, ECF No. 1.) The Court has decided this matter based on the parties' written submissions and oral argument. For the reasons stated herein, the Motion for Summary Judgment is granted. Section 12.7 violates the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2. Defendant is hereby enjoined from enforcing

1

Section 12.7 with respect to arbitration agreements between employers and employees that are governed by the FAA.

## BACKGROUND

Plaintiff New Jersey Civil Justice Institute ("NJCJI") is a nonprofit, nonpartisan group whose members include individuals, small businesses, business associations, and professional organizations. (Compl. ¶ 13.) NJCJI's stated mission is to "advocate for a civil justice system that treats all parties fairly and resolves disputes expeditiously and impartially." (Pls.' Statement of Undisputed Material Facts ("SUMF") ¶ 19, ECF No. 13-2.) NJCJI asserts that many of its members enter into pre-dispute arbitration agreements with their employees. (*Id.* ¶ 26.) Plaintiff Chamber of Commerce of the United States of America ("Chamber") is a business federation representing approximately 300,000 members. (Compl. ¶ 14.) Chamber routinely advocates on matters of federal arbitration law and anti-business regulatory actions. (Pls.' SUMF ¶ 23.) Chamber asserts that many of its members operate in New Jersey and enter into pre-dispute arbitration agreements with their employees. (*Id.* ¶ 26.)

On March 18, 2019, New Jersey enacted Section 12.7, which provides in relevant part:

a. A provision in any employment contract that waives any substantive or procedural right or remedy relating to a claim of discrimination, retaliation, or harassment shall be deemed against public policy and unenforceable.

b. No right or remedy under the "Law Against Discrimination," P.L. 1945, c.169 (C.10:5-1 et seq.) or any other statute or case law shall be prospectively waived.

N.J. Stat. Ann § 10:5-12.7. Section 12.7 is an amendment to the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 *et seq*. ("NJLAD"), which gives "[a]ny person claiming to be aggrieved by an unlawful employment practice or an unlawful discrimination" the "right to file a complaint in the Superior Court to be heard before a jury." §§ 10:5-13(a)(1)–(2). Under the

NJLAD, an aggrieved party may also file a complaint with the Attorney General, who "shall cause prompt investigation" of the claim and "engage in conciliation." § 10:5-14. The NJLAD also authorizes the Attorney General to initiate a suit in New Jersey Superior Court on his own accord. § 10:5-13(a)(2).

Plaintiffs argue that Section 12.7, read in conjunction with the other provisions of the NJLAD, prohibits pre-dispute arbitration agreements between employers and their employees. (Pls.' Br. at 1–2, ECF No. 13-1.) For this reason, Plaintiffs assert that Section 12.7 is preempted by the FAA. (*Id.*)

On August 30, 2019, Plaintiffs filed the present suit seeking a declaration that Section 12.7 is preempted by the FAA and an injunction precluding Defendant from enforcing the provision. (Compl. ¶¶ 46, 50.) On January 7, 2020, Defendant filed a Motion to Dismiss, arguing that Plaintiffs lacked standing and that the case was not ripe for adjudication. (ECF No. 12.) The same day, Plaintiffs filed a Motion for Summary Judgment. (ECF No. 13.) Defendant filed an Opposition to the Motion for Summary Judgment (ECF No. 19), and Plaintiffs filed a Reply (ECF No. 23). On July 21, 2020, the Court denied Defendant's Motion to Dismiss, finding that Plaintiffs had standing and that their claims were ripe for adjudication. (Op. at 12, 16, ECF No. 24.) The Court reserved ruling on the Motion for Summary Judgment until after oral argument. (*Id.* at 3.) The parties exchanged discovery and submitted supplemental briefing. (ECF Nos. 44, 45.) The Court held oral argument on March 4, 2021. Plaintiffs' Motion for Summary Judgment is presently before the Court.

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

3

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

At the summary judgment stage, a district court considers the facts drawn from materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

## DISCUSSION

**I.     Standing**

In the Court's previous Opinion denying Defendant's Motion to Dismiss, the Court concluded that Plaintiffs presented sufficient evidence of standing to overcome a motion to dismiss, but noted that Plaintiffs would need to present more specific evidence to prevail on a motion for summary judgment. (Op. at 7–8, 12–13.) Defendant asserts that Plaintiffs have not met this burden, and thus lack standing to bring their claims. (Def.'s Suppl. Br. at 3–9, ECF No.

45.) The Court finds that Plaintiffs have presented sufficient specific evidence to confer standing at the summary judgment stage.

To establish Article III standing for injunctive relief, a plaintiff must show (1) "that he is under threat of suffering 'injury in fact' that is concrete and particularized"; (2) "the threat must be actual and imminent, not conjectural or hypothetical"; (3) "it must be fairly traceable to the challenged action of the defendant"; and (4) "it must be likely that a favorable judicial decision will prevent or redress the injury." *Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 825 F.3d 149, 165 (3d Cir. 2016) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Because the standing elements "are not mere pleading requirements" but rather an essential part of a plaintiff's case, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

    A.    *Injury-in-Fact*

To allege an injury-in-fact, Plaintiffs must show that they have suffered "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). Organizations or associations "are unable to establish standing solely on the basis of institutional interest in a legal issue." *Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 162 (3d Cir. 2007). Instead, an organization may assert standing (a) through direct injury to the organization or (b) as a representative of injured members of the organization. *See id.* at 163. Both NJCJI and

5

Chamber assert that they have associational standing, while only NJCJI advances a theory of direct organizational standing. (Pls.' Suppl. Br. at 3, ECF No. 44.)[1]

### 1. Associational Standing

To establish representative, or associational, standing, an organization must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). "Sufficient injury exists to confer standing where the regulation is directed at [the plaintiffs] in particular; it requires them to make significant changes in their everyday business practices; [and] if they fail to observe the . . . rule they are quite clearly exposed to the imposition of strong sanctions, even where there is no pending prosecution." *Free Speech Coal.*, 825 F.3d at 166 (internal quotation marks omitted); *see also Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 147–48 (3d Cir. 2000) (finding standing and ripeness when the statute could "fairly easily" be read to prohibit the plaintiffs' constitutionally-protected conduct, the statute threatened plaintiffs "with severe civil penalties," and plaintiffs "received no assurances that [the statute] would not be enforced against them").

Here, both NJCJI and Chamber have identified members who have been injured by Section 12.7 and who would otherwise have standing to sue in their own right. Alida Kass, then-

---

[1] Chamber originally advanced theories of both associational and direct organizational standing. (*See* Pls.' Br. at 15–16, ECF No. 13-1.) However, in Plaintiffs' Supplemental Brief supporting their Motion for Summary Judgment, Chamber did not produce evidence to support a theory of direct organizational standing and opted to rely solely on associational standing. (*See* Pls.' Suppl. Br. at 3, ECF No. 44.)

president and chief counsel of NJCJI, and Glenn Spencer, president of Chamber, both provided sworn declarations stating that some of their members entered into binding pre-dispute arbitration agreements with employees after Section 12.7 was enacted. (Kass Decl. ¶ 11, ECF No. 13-4; Spencer Decl. ¶ 11, ECF No. 13-3.) More specifically, Comcast Corporation ("Comcast"), a member of Chamber, entered into a pre-dispute arbitration agreement with an employee in New Jersey as recently as August, 2019. (*See* Tr. of Mot. to Compel Arbitration at 4, *Albino v. Comcast Corp.*, No. OCN-L-0021250-20 (N.J. Super. Ct. Law Div. Jan. 25, 2021), Stone Decl. Ex. B, ECF No. 44-3.) Additionally, PricewaterhouseCoopers LLP ("PwC"), a member of both Chamber and NJCJI, continued to utilize pre-dispute arbitration agreements nationwide after the enactment of Section 12.7. (Pls.' Suppl. Br. at 4–5 (citing cases in which PwC moved to compel arbitration).) Thus, because Comcast and PwC are both directly regulated by Section 12.7 and must either make significant changes to their everyday business practices or face the threat of sanctions or civil penalties, they have experienced a sufficient injury to confer standing. *See Free Speech Coal.*, 825 F.3d at 166; *see also Const. Party of Pa. v. Aichele*, 757 F.3d 347, 362 (3d Cir. 2014) (quoting *Lujan*, 504 U.S. at 561–62) (explaining that "standing depends considerably upon whether the plaintiff is himself an object of the action . . . [i]f he is, there is ordinarily little question that the action or inaction has caused him injury").

      Defendant's argument that Comcast and PwC have not been injured because Defendant has not taken steps to enforce Section 12.7 against them is unavailing. The existence of an investigatory action or a prosecution is not required to show imminent injury. *See Free Speech Coal.*, 825 F.3d at 166 (finding standing "even where there is no pending prosecution"); *Farmer*, 220 F.3d at 148 (finding standing when plaintiffs "received no assurances that [the statute] would not be enforced against them"); *Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294, 1300 (3d Cir.

7

1996) (rejecting the government's argument that "no harm is imminent because no prosecution is pending"). Here, Defendant and the Division of Civil Rights ("DCR") are charged by statute with enforcing all provisions of the NJLAD, including Section 12.7. N.J. Stat. Ann. § 10:5-30. In addition to this statutory duty, Defendant has not disclaimed an intent to enforce Section 12.7. When asked whether he "intend[s] to enforce Section 12.7 . . . against business that make use of pre-dispute arbitration agreements with employees in New Jersey," Defendant answered that "faced with an allegation of a violation of Section 12.7, DCR would evaluate any appropriate enforcement action." (Def.'s Resp. to Reqs. for Admis., Stone Decl. Ex. C at 4, ECF No. 44-4.) For these reasons, the Court concludes that Plaintiffs have demonstrated that their members would otherwise have standing to sue in their own right.

  The Court also finds that the second prong of the associational standing test is satisfied. Chamber's stated mission "is to advocate for policies that help businesses grow and create jobs in their communities," which in its view, includes "preserv[ing] the ability of its members, and the business community more broadly, to enter into arbitration agreements." (Spencer Decl. ¶¶ 4–5.) Similarly, NJCJI's stated mission "is to advocate on behalf of its members for a civil justice system that treats all parties fairly and resolves disputes expeditiously and impartially." (Kass Decl. ¶ 4.) To advance this mission, NJCJI "advocates to preserve the rights of parties to access alternative means of dispute resolution, such as arbitration." (*Id.*)  Thus, the interests that Plaintiffs seek to protect—namely, their members' ability to enter to pre-dispute arbitration agreements with their employees—are "germane to the organization[s'] purpose." *See Hunt*, 432 U.S. at 343; *see also Cortes*, 622 F.3d at 229 (finding that interests related to the commutation process were germane to the purpose of a criminal justice advocacy organization); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 258 (3d Cir. 2005) (finding that a suit to clean

up a former chemical plant was germane to the purpose of an organization committed to "improv[ing] . . . the quality of life" of the citizens of the county).

Finally, the claim asserted does not require the participation of individual members in the lawsuit. This prong of the associational standing test is a "judicially self-imposed" limit for purposes of "administrative convenience and efficiency." *United Food and Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996). Under this prong, "conferring associational standing is improper for claims requiring a fact-intensive-individual inquiry." *Free Speech Coal. v. Att'y Gen. U.S.*, 974 F.3d 408, 421 (3d Cir. 2020) (internal quotation marks omitted); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 262 n.25 (3d Cir. 2014) (concluding that an organization lacked standing to sue on behalf of its members because of the "highly individualized nature" of the claims). Here, the question before the Court is a purely legal one, and the relief sought applies across-the-board to all of Plaintiffs' members who operate in New Jersey. Thus, the Court is not required to undertake the "fact-intensive-individual inquir[ies]," that would make associational standing untenable. *See Free Speech Coal.*, 974 F.3d at 421. Additionally, the relief requested—a declaration and injunction—may be sought by Plaintiffs on behalf of their members. *See Hunt*, 432 U.S. at 343.

Accordingly, the Court concludes that Plaintiffs have adequately demonstrated an injury-in-fact under a theory of associational standing

2. <u>Direct Organizational Standing</u>

NJCJI also has direct organizational standing to bring suit. An entity has direct organizational standing when the organization itself suffers injuries as a result of the defendant's allegedly unlawful conduct. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982). This may occur, for example, when an organization must divert its resources to counteract the

allegedly unlawful conduct. *See id.* (finding an injury-in-fact where the organization alleged that the unlawful conduct "perceptibly impaired" its ability to provide counseling and referral services by requiring it to "devote significant resources to identify and counteract the defendant's [unlawful conduct]"); *Fair Hous. Rts. Ctr. in Se. Pa. v. Post Goldtex GP, LLC*, 823 F.3d 209, 214 n.5 (3d Cir. 2016) (finding standing where the organization alleged that its mission had been frustrated "because it has had to divert resources in order to investigate and prosecute the alleged discriminatory practices").

NJCJI asserts that it has direct organizational standing because it expended time and resources to counteract Section 12.7. (Pls.' Suppl. Br. at 8.) According to Ms. Kass, Section 12.7 "impedes NJCJI's ability to carry out its mission to work toward a more efficient civil justice system," and has forced NJCJI to "divert[] resources from its other efforts to promote efficient dispute resolution in New Jersey." (Kass Decl. ¶¶ 7, 10.)

Defendant maintains that NJCJI has failed to provide sufficient evidence to demonstrate direct organizational standing. (Def.'s Suppl. Br. at 6.) Defendant rests its position on *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71 (3d Cir. 1998). (*Id.*) In that case, the plaintiff alleged that the defendant's discriminatory conduct forced it to divert organizational resources to an educational campaign. *Fair Hous. Council*, 141 F.3d at 76. However, the Third Circuit concluded that because the plaintiff "was unable to say when such measures might be undertaken or when funds might actually be expended in support of this educational effort," the "inchoate plans for future programs [were] insufficient to demonstrate injury for purposes of Article III." *Id.* at 77.

Here, unlike in *Fair Housing Council*, NJCJI has demonstrated with specific facts that it has already diverted resources to counteract Section 12.7. NJCJI hosted an event in October 2019

10

entitled "New Jersey's Changing Legal Landscape: What New Jersey Businesses Need to Know." (DeGesero Decl. ¶ 2, Stone Decl. Ex. B, ECF No. 44-3.) A panel at the event entitled "The Uncertainty of Arbitration in New Jersey Employment Contracts" included a discussion of Section 12.7 and the law's impact on arbitration clauses in employment contracts. (*Id.* ¶¶ 6–7.) NJCJI's executive assistant spent over thirty hours organizing the event (McCreedy Decl. ¶ 3, Stone Decl. Ex. B, ECF No. 44-3), and an NJCJI consultant spent twenty hours preparing for the event (DeGesero Decl. ¶ 3). These employee hours represent time and effort addressing Section 12.7 that could have been put towards other projects. *Cf. Havens*, 455 U.S. at 379 n.21 (stating that plaintiff "will have to demonstrate at trial that it has indeed suffered impairment . . . before it will be entitled to judicial relief"); *Fair Hous. Council*, 141 F.3d at 77 (finding no injury for purposes of standing where plaintiff "admitted that it has yet to undertake any educational countermeasures . . . directed at reversing the damage alleged to have been caused," and "was unable to say when such measures might be undertaken or when funds might actually be expended"). For these reasons, the Court finds that NJCJI has sufficiently shown an injury-in-fact under a theory of direct organizational standing.

      B.    *Causation and Redressability*

The Court finds that the standing elements of causation and redressability are also satisfied. Plaintiffs' injuries derive from the enactment and future enforcement of Section 12.7. Defendant and the DCR are tasked with enforcing all provisions of the NJLAD, including Section 12.7. N.J. Stat. Ann. § 10:5-30. While private individuals can make a complaint in accordance with other provisions of the NJLAD, only Defendant can initiate an investigation and bring an enforcement action to penalize Plaintiffs' members for violating Section 12.7. *See* N.J. Stat. Ann. § 10:5-14. Thus, Plaintiffs' injuries flow directly from Defendant's actions. *See Duke*

*Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 77–78 (1978) (applying a "but for" test to the causation analysis). Additionally, it is likely that a declaratory judgment stating that Section 12.7 is preempted by the FAA and an injunction enjoining Defendant from enforcing the law will prevent Plaintiffs' injuries. *See Friends of the Earth*, 528 U.S. at 185–86 (reasoning that "for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress"). Therefore, the Court concludes that both NJCJI and Chamber have standing to challenge Section 12.7.

## II.    Federal Arbitration Act

Because Plaintiffs have standing and their claims are ripe, the Court turns to the merits of Plaintiffs' Motion for Summary Judgment.[2] Plaintiffs argue that Section 12.7 is preempted by the FAA and is therefore invalid under the Supremacy Clause of the United States Constitution. (Pls.' Br. at 19.) Defendant has not argued at any point throughout the litigation that Section 12.7 survives a preemption challenge. The Court concludes that Section 12.7, as applied to arbitration agreements governed by the FAA, is preempted.

The Supreme Court has held that the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012). Because the FAA is a federal statute, any state law that conflicts with it or frustrates its purpose violates the Supremacy Clause. *See* U.S. Const. art. VI, cl. 2; *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 347 n.6 (2011) ("States remain free to take steps addressing the concerns that attend contracts of adhesion . . .

---

[2] In the Court's previous Opinion denying Defendant's Motion to Dismiss, the Court concluded that Plaintiffs' claims were ripe for adjudication. (Op. at 12–13, ECF No. 24.)

12

[s]uch steps cannot, however, conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms.").

Section 2 of the FAA "foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). Section 2 provides that a

> written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The provision's "saving clause," which recognizes "only defenses that apply to any contract," *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018), requires courts to "place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms," *Concepcion*, 563 U.S. at 339 (citations omitted). As a result, a state law that "singl[es] out arbitration provisions for suspect status . . . directly conflicts with § 2 of the FAA." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Critically, a state law that "avoid[s] referring to arbitration by name" does not avoid FAA preemption. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) (citing *Concepcion*, 563 U.S. at 341). A state law that "discriminat[es] on its face against arbitration" as well as "any rule that covertly accomplishes the same objective by disfavoring contracts that . . . have the defining features of arbitration agreements" will be preempted by the FAA. 137 S. Ct. at 1426. In *Kindred Nursing*, the Supreme Court held that a Kentucky state-law rule requiring express authorization from a principal before an agent could waive the principal's right to a jury was preempted by the FAA. *Id.* at 1426, 1429. Although the Kentucky rule did not refer to arbitration by name, the Court concluded that the rule was preempted because it "hing[ed] on the primary characteristic of an arbitration agreement . . . a waiver of the right to go to court and

receive a jury trial." *Id.* at 1427. Accordingly, a state law that "rel[ies] on the uniqueness of an agreement to arbitrate as [its] basis" violates the FAA. *Id.* at 1426; *see also Concepcion*, 563 U.S. at 342 (stating that state-law rules requiring disposition by a jury, judicially monitored discovery, or use of the Federal Rules of Evidence are "obvious illustration[s]" of rules that would be subject to preemption because such rules "[i]n practice . . . have a disproportionate impact on arbitration agreements").

Like the rule at issue in *Kindred Nursing*, Section 12.7 does not mention arbitration by name. However, Section 12.7 prohibits the waiver of "any substantive or procedural right or remedy," N.J. Stat. Ann § 10:5-12.7, which, according to the NJLAD, encompasses "the right to file a complaint in the Superior Court to be heard before a jury," §§ 10:5-13(a)(1)–(2). Because the waiver of the right to go to court and receive a jury trial is the "primary characteristic," or "defining trait" of arbitration agreements, Section 12.7, in effect, "singles out arbitration agreements for disfavored treatment." *See Kindred Nursing*, 137 S. Ct. at 1425–26. In short, Section 12.7 contravenes the FAA for the same reason the preempted rule in *Kindred Nursing* did: it subjects arbitration agreements to "uncommon barriers" and fails to put them "on an equal plane with other contracts." *Id.* at 1426–27.

For this reason, the Court concludes that Section 12.7 is preempted by the FAA. The Court arrives at this conclusion even though Section 12.7 does not mention arbitration by name and purports to only apply to certain types of claims.[3]

---

[3] The Court is not alone in this conclusion. Earlier this year, the New Jersey Superior Court in Monmouth County concluded that Section 12.7 was preempted by the FAA. *See Janco v. Bay Ridge Auto. Mgmt. Corp.*, No. MON-L-1967-20 (N.J. Super. Ct. Law. Div. Jan. 22, 2021). Federal Courts in New York and California have also found state laws similar to Section 12.7 to be preempted by the FAA. *See Latif v. Morgan Stanley & Co. LLC*, 2019 WL 2610985, at *3 (S.D.N.Y. June 26, 2019) (finding N.Y. C.P.L.R. § 7515 preempted); *White v. WeWork Cos., Inc.*, 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020) (same); *Chamber of Commerce of U.S.*

## III. Injunctive Relief

Plaintiffs seek an injunction enjoining Defendant from enforcing Section 12.7. A plaintiff seeking a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

### A. *Irreparable Injury and No Adequate Remedy at Law*

Irreparable harm "must be of a peculiar nature, so that compensation in money alone cannot atone for it." *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987). The first two permanent injunction elements, therefore, "typically constitute two sides of the same inquiry, for the availability of adequate monetary damages belies a claim of irreparable injury." *Ne. Pa. Freethought Soc'y v. Cnty. of Lackawanna Transit Sys.*, 938 F.3d 424, 442 (3d Cir. 2019) (internal quotation marks omitted).

Plaintiffs have met their burden of demonstrating irreparable harm and lack of an adequate remedy at law. The Court notes that Plaintiffs need not wait until an enforcement action is initiated against them to demonstrate irreparable harm. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (citing *Ex Parte Young*, 209 U.S. 123, 156 (1908)) ("When enforcement actions are imminent—and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and

---

*v. Becerra*, 438 F. Supp. 3d 1078, 1099 (E.D. Cal. 2020), *appeal filed*, No. 20-15291 (9th Cir. Feb. 24, 2020) (finding California's AB 15 preempted).

raising its federal defenses—there is no adequate remedy at law."). Although Defendant posits that he has no plans to enforce Section 12.7, he has declined to state that he would not enforce the provision under appropriate circumstances. (Def.'s Resp. to Reqs. for Admis. at 4.) And, as discussed, it is apparent that some of Plaintiffs' members have violated Section 12.7, exposing themselves to liability. (Pls.' Suppl. Br. at 4–5.) Accordingly, the Court concludes that Plaintiffs face irreparable injury vis-à-vis the threat of investigation and prosecution under Section 12.7.

This conclusion is underscored by the fact that because Defendant is a state official sued in his official capacity, any relief in the form of monetary damages is barred by sovereign immunity. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 120 (1984); *see also Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013) ("[N]umerous courts have held that the inability to recover monetary damages because of sovereign immunity renders the harm suffered irreparable.").

    B.    *Balance of Hardships and the Public Interest*

When the government is the party opposing injunctive relief, the balancing of hardships and the public interest inquiry merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs argue that both factors "weigh sharply" in their favor. (Pls.' Br. at 27.) They assert that Section 12.7 deprives business and workers of the "many benefits of arbitration," and contend that Defendant will suffer "no harm if an injunction issues." (*Id.* at 27–28.)

The Supreme Court has observed that arbitration provisions hold "real benefits," *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122–23 (2001), such as "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes," *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010)). Moreover, although New Jersey has a significant interest

in protecting the rights of its citizens through legislation, New Jersey's laws must "give way" to conflicting federal law. *See Perry v. Thomas*, 482 U.S. 483, 491 (1987). Thus, these factors weigh in favor of granting injunctive relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 13) is granted. Pursuant to 28 U.S.C. § 2201(a), the Court hereby declares that Section 12.7 violates the Supremacy Clause of the United States Constitution. Defendant is enjoined from enforcing Section 12.7 with respect to arbitration agreements between employers and employees that are governed by the FAA. Nothing in this Court's Opinion applies to any other provision or amendment of the NJLAD. An appropriate Order will follow.

Date: <u>March 25, 2021</u>                                           <u>*/s/ Anne E. Thompson*</u>
                                                                           ANNE E. THOMPSON, U.S.D.J.